IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------X

**LK ENTERPRISES, LLC (d/b/a Roofman),** a Michigan limited liability company; and **ROOF TURBO, LLC**, a Michigan limited liability company,

    Plaintiffs,

- versus -

**BHS SERVICES, INC. (D/B/A ROOF GOAT),** a Michigan corporation; **WILLIAM SMITH**, an individual; **BHS SERVICES, INC.**, a Colorado corporation; **ROOF GOAT, LLC**, a Colorado limited liability company; and **WALTER SCOTT BENNETT**, an individual,

    Defendant.

------------------------------X

Civ. Action No.:

Hon. Judge:

**JURY TRIAL DEMANDED**

## COMPLAINT

There is no other civil action between these parties arising out of the same transaction or occurrences as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.

## NATURE OF THE ACTION

1. This is a civil action for damages and injunctive relief arising out of Defendants' trademark infringement, counterfeiting, false designation of origin, and theft of trade secrets under federal and state law as a result of (A)

1

Defendants' willful infringement of Plaintiff LK Enterprises, LLC's, ("LK") rights in the registered trademark depicted on the attached **Exhibit 1** (the "ROOFMAN Mark"); (B) Defendants' counterfeiting by using the ROOFMAN Mark and Plaintiff LK's trade dress, depicted on the attached **Exhibit 2** (the "ROOFMAN Trade Dress"), on a website controlled by the Defendants, purporting to show roofing jobs performed by the Defendants; (C) Defendants' willful infringement of Plaintiff Roof Turbo LLC's ("Roof Turbo") registered trademark depicted on the attached **Exhibit 3** (the "ROOF TURBO Mark"); (D) Defendants' false designation of origin with regards to the ROOFMAN Mark and the ROOFMAN Trade Dress; and (E) Defendants' willful misappropriation of Plaintiff LK's trade secrets under the law of the State of Michigan.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff LK is a Michigan limited liability company located in the Eastern District of Michigan, with its registered office at 8166 Braun Road, Saline, MI 48176.

3. Lucas Greaves is the resident agent of LK.

4. Plaintiff Roof Turbo is a Michigan limited liability company located in the Eastern District of Michigan, with its registered office at 18600 Wingate Road, Manchester, MI 48158.

5. Kurt Greaves is the resident agent of Roof Turbo.

6. BHS Services Inc. ("BHS MI") is a Michigan for-profit corporation located in the Eastern District of Michigan, with a registered office at 13195 Darling Road, Milan, MI 48160.

7. William Smith is an individual living in the Eastern District of Michigan at 13195 Darling Road, Milan, MI 48160.

8. William Smith is the resident agent, President, Secretary, and sole Director of BHS MI.  **Exhibit 4**, *Annual Report for BHS MI*.

9. Walter Scott Bennett is an individual resident of Colorado residing at 12441 Clermont Street, Thornton, CO 80241.

10. Walter Scott Bennett is the Treasurer of BHS MI.  *Id.*

11. On information and belief, William Smith is an owner of BHS MI.

12. BHS Services Inc. ("BHS CO") is a Colorado for-profit corporation with a principal office located at 11790 E 160th Ave, Brighton, CO 80602.

13. When it was organized, BHS CO used 12441 Clermont Street, Thornton, CO 80241 as its registered agent's mailing address.

14. BHS CO has a registered d/b/a with the State of Colorado for Roof Goat USA.

15. Roof Goat LLC is a Colorado for-profit limited liability company with its principal office located at 11790 E 160th Ave, Brighton, CO 80602.

16. When it was organized, Roof Goat LLC used 12441 Clermont Street, Thornton, CO 80241 as its registered agent's mailing address.

17. Upon information and belief, BHS MI, BHS CO, and Roof Goat LLC are affiliated companies that are under common control under the Internal Revenue Code, 26 CFR §1.414(c)-2.

18. The website www.roofgoatusa.com ("Roof Goat USA Website") is jointly owned and operated by BHS MI and BHS CO, lists its co-owners as William Smith and Walter Scott Bennett, and lists its service area to include portions of both Michigan and Colorado. **Exhibit 5**, *Roof Goat USA website*.

19. Jurisdiction over the parties and subject matter of this action is proper in this Court pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. § 1338(a) (actions arising under an Act of Congress relating to trademarks, *inter alia*). Jurisdiction over the state law claims is vested in this Court pursuant to 28 U.S.C. 1367(a) and the principals of pendent jurisdiction.

20. Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendants, through their sales activities, business activities, business entities, affiliations, and licensing may be found in this District, and a substantial part of the events giving rise to the claims in this action occurred within this District.

## COMMON ALLEGATIONS OF FACT

21. The allegations set forth in the preceding paragraphs are re-alleged and incorporated as if fully set forth herein.

22. Kurt Greaves is the father of Lucas Greaves.

23. Kurt Greaves is the prior owner of LK.

24. Kurt Greaves sold LK to Lucas Greaves.

25. LK and Roof Turbo are not under common control under the Internal Revenue Code, 26 CFR §1.414(c)-2.

26. LK owns the valid U.S. trademark reg. no. 87452039 for the ROOFMAN Mark. **Exhibit 1**, *ROOFMAN Mark.*

27. LK uses the ROOFMAN Trade Dress, a distinctive and patented underlayment that is red and has the ROOFMAN Mark imprinted on its surface. **Exhibit 2**, *Roofman Trade Dress.*

28. Roof Turbo owns the valid U.S. trademark reg. no. 7,244,239 for the word mark ROOF TURBO. **Exhibit 3**, *ROOF TURBO Mark.*

29. Roof Turbo designed and filed a patent application for an attic ventilation system ("Attic Ventilation System"), embodied in a U.S. utility patent application publication number US-2023-0400202-A1.

30. The Patent Application is still pending before the U.S. Patent and Trademark Office.

31. Roof Turbo uses the ROOF TURBO Mark in conjunction with the marketing and sales of the Attic Ventilation System.

32. Bill Smith worked for LK as a salesman on more than one occasion over the years.

33. As of January 28, 2025, Bill Smith was employed by LK.

34. On January 28, 2025, in his role as a salesperson for LK, Bill Smith persuaded Roof Turbo and Kurt Greaves to allow the use of the patent-pending Attic Ventilation System to be used on a roofing job he sold for LK.

35. During the installation of the Attic Ventilation System for the LK roofing job, Bill Smith surreptitiously took video of the installation while still in the employment of LK.

36. Without approval from either LK or Roof Turbo, Bill Smith posted the video on the Roof Goat USA Facebook for a period of at least six (6) hours, where it was viewed by Mr. Roof, a competitor of LK.

37. On information and belief, the video was also viewed by Walter Scott Bennett.

38. On or about March 11, 2025, Bill Smith arrived unannounced and uninvited at the house of Kurt Greaves.

39. Bill Smith said that he was starting a roofing business called Roof Goat USA in Colorado.

40. Bill Smith asked for permission to sell the patent-pending Attic Ventilation System using his newly formed roofing company in Colorado.

41. Kurt Greaves did not give his permission.

42. Based on Bill Smith's statements in the time period on or about March 11, 2025, neither Kurt Greaves nor Lucas Greaves believed that Bill Smith was then currently working and promoting his separate Michigan-based roofing business.

43. Bill Smith formed Roof Goat LLC on or about January 13, 2025, while still employed with LK.

44. Bill Smith formed BHS CO on or about April 1, 2025.

45. BHS CO adopted the trade name "Roof Goat USA" on or about April 9, 2025.

46. Sometime in the spring of 2025, Kurt Greaves and Lucas Greaves became aware that Bill Smith had started Roof Goat USA.

47. The Facebook page for Roof Goat USA shows a picture of the ROOFMAN Trade Dress bearing the ROOFMAN Mark. **Exhibit 6,** *Roof Goat USA Facebook page*.

48. On or about April 11, 2025, Plaintiffs sent Defendants Bill Smith, BHS MI, Walter Scott Bennett, and Roof Goat LLC a cease and desist letter. **Exhibit 7**, *Cease and Desist Letter*.

49. The Roof Goat USA website used pictures of LK roofing jobs on its website, showing the ROOFMAN Mark and the ROOFMAN Trade Dress. *Id.*

50. The Roof Goat USA website purported to the consuming public that the LK roofing jobs using the ROOFMAN Mark and ROOFMAN Trade Dress were jobs performed by Roof Goat USA. *Id.*

51. Plaintiff LK has a Customer Resource Management System ("CRM System")

52. On or about March 29, 2025, Bill Smith accessed Plaintiff LK's CRM System.

53. LK restricts access to its CRM System and deletes old credentials.

54. On or about March 29, 2025, Bill Smith's login credentials were still valid, because Bill Smith had not disclosed that he was competing against Plaintiff LK.

55. Bill Smith coded a job for customer SF as DEAD and noted that it went to someone else.

56. On information and belief, Bill Smith serviced, or attempted to service customer SF through BHS MI.

57. Bill Smith altered images in the SF file.

58. Bill Smith also altered records for customers or potential customers JB, JC, and PL.

8

## COUNT I:  TRADEMARK INFRINGEMENT OF ROOFMAN MARK
## UNDER 15 U.S.C. §§1114

59. Plaintiff LK incorporates, repeats and re-alleges the allegations set forth in all of the preceding paragraphs.

60. The ROOFMAN Mark is a registered federal trademark, U.S. Reg. No. 5,359,344.  **Exhibit 1**, *ROOFMAN Mark.*

61. LK owns the ROOFMAN Mark.  *Id.*

62. BHS MI and BHS CO maintain the Roof Goat Website.

63. On information and belief, Roof Goat LLC is affiliated with BHS MI and BHS CO and shares the Roof Goat Website with them.

64. Bill Smith and Walter Scott Bennett are officer and owners of the three business entities and make all decisions about the content and substance of their advertising, including the use of the ROOFMAN Mark on the Roof Goat USA Website.

65. The Defendants used the ROOFMAN Mark on their Roof Goat USA Website.

66. The Facebook page for Roof Goat USA still shows a picture of the the ROOFMAN Mark.  **Exhibit 7,** *Roof Goat USA Facebook page*.

67. The Defendants' conduct was intentional.

68. The Defendants conduct likely caused consumer confusion.

69. The acts and conduct of Defendants complained of herein constitute

trademark infringement of the ROOFMAN Mark, in violation of the Lanham Act, 15 U.S.C. §1114.

70. Plaintiff LK has been injured by the Defendants' trademark infringement.

71. Plaintiff LK seeks relief under 15 U.S.C. §1117.

## COUNT II:  COUNTERFEITING OF ROOFMAN MARK UNDER 15 U.S.C. §§1114

72. Plaintiff LK incorporates, repeats and re-alleges the allegations set forth in all of the preceding paragraphs.

73. By their unauthorized use of a ROOFMAN Mark that is identical to or substantially indistinguishable from the registered ROOFMAN Mark, Defendants are trading on the ROOFMAN Mark's goodwill and reputation.

74. Defendants' unauthorized use of the ROOFMAN Mark, on the Roof Goat USA Webpage and on the Facebook page maintained by Roof Goat USA, constitutes counterfeiting of federally registered trademarks and will likely confuse and deceive customers into erroneously believing that Defendants and their merchandise are associated with and/or authorized by LK.

75. The acts and conduct of Defendants complained of herein constitute counterfeiting of the ROOFMAN Mark, in violation of the Lanham Act, 15 U.S.C. §1114.

76. Plaintiff LK has been injured by the Defendants' counterfeiting.

77. Plaintiff LK seeks relief under 15 U.S.C. §1117, including statutory

damages, attorney fees, and costs.

## COUNT III:  TRADEMARK INFRINGEMENT OF ROOF TURBO MARK UNDER 15 U.S.C. §§1114

78. Plaintiff Roof Turbo incorporates, repeats and re-alleges the allegations set forth in all of the preceding paragraphs.

79. The ROOF TURBO Mark is a registered federal trademark, U.S. Reg. No. 7,244,239.  **Exhibit 2**, *ROOF TURBO Mark.*

80. Roof Turbo owns the ROOF TURBO Mark.  *Id.*

81. BHS MI, BHS CO, and Roof Goat USA maintain the Facebook page for Roof Goat USA.

82. Bill Smith and Walter Scott Bennett are officer and owners of the three business entities and make all decisions about the content and substance of their advertising, including the use of the ROOF TURBO Mark on their Facebook page.

83. The Defendants' conduct was intentional.

84. The Defendants conduct likely caused consumer confusion.

85. The acts and conduct of Defendants complained of herein constitute trademark infringement of the ROOF TURBO Mark, in violation of the Lanham Act, 15 U.S.C. §1114.

86. Plaintiff Roof Turbo has been injured by the Defendants' trademark infringement.

11

87. Plaintiff Roof Turbo seeks relief under 15 U.S.C. §1117.

**COUNT IV:  UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF THE ROOFMAN TRADE DRESS UNDER 15 U.S.C. §1125**

88. Plaintiff LK incorporates, repeats and re-alleges the allegations set forth in all of the preceding paragraphs.

89. Plaintiff LK has rights under both the Lanham Act and common law with respect to the right, title, and interest in the ROOFMAN Trade Dress.

90. Plaintiff LK holds the exclusive right to market roofing services using the ROOFMAN Trade Dress.

91. Defendants' conduct as alleged herein, including the use of the ROOFMAN Trade Dress on the Roof Goat USA Website and on the Facebook page for Roof Goat USA maintained by the Defendants, constitutes unfair competition and a false designation of origin likely to cause consumer confusion.

92. Defendants' conduct of marketing roofing services using similar trade dress to that of the Plaintiff as well as bearing the mark ROOFMAN Mark likely caused, or will cause, actual consumer confusion as to the origin, sponsorship, affiliation, connection and/or association of the counterfeit instruments to Plaintiff LK.

93. The infringing advertising is calculated and intended to deceive, or is reckless and likely to deceive, consumers into actual confusion as to the seller of the roofing services.

94. The infringing advertising, which bears an exact replica of the ROOFMAN Mark and the ROOFMAN Trade Dress does not originate from, or have the approval or authorization of, Plaintiff LK.

95. Defendants are capitalizing on and profiting from the likely consumer confusion between their infringing counterfeit roofing services and Plaintiff LK's authentic brand of goods and services.

96. The foregoing acts of Defendants constitute unfair competition and false designation of origin in violation of §43 of the Lanham Act, 15 U.S.C. § 1125(a).

97. Plaintiff LK has sustained losses and is entitled to monetary damages in an amount to be proved at trial.

98. On information and belief, Defendants have obtained gains, profits, and advantages as a result of its wrongful acts in an amount not yet determined or ascertainable and said gains, profits and advantages rightfully belong to the Plaintiff LK.

99. As such, Plaintiffs are entitled to damages to be proven at trial.

### COUNT V:  MISAPPROPRIATION OF TRADE SECRETS UNDER MICHIGAN LAW

100. Plaintiff LK incorporates, repeats and re-alleges the allegations set forth in all of the preceding paragraphs.

101. The information contained in Plaintiff LK's CRM System, including, but not limited to, the name of prospective clients ascertained through advertising, the name of prospective clients ascertained through a referral, address of prospective clients, financing information of prospective clients, analysis, damage assessments, and estimates, are of a type usually treated as trade secrets within the construction industry and constitute trade secrets as defined under the Michigan Uniform Trade Secrets Act ("MUTSA"), MCL §445.1901 et. seq.

102. The confidential and proprietary business records contained in Plaintiff LK's CRM System are not generally known by Plaintiff LK's competitors.

103. The confidential and proprietary business records contained in Plaintiff LK's CRM System are not readily accessible to Plaintiff LK's competitors.

104. Those trade secrets provided Plaintiff LK an opportunity to obtain an advantage over competitors who did not know or use them.

105. Plaintiff LK's trade secrets incorporated into its CRM System are of great value to Plaintiff LK, and another party utilizing this information would also find it of great value.

106. Plaintiff LK devoted substantial time, energy, effort, and resources to developing its trade secrets.

107. Plaintiff LK uses reasonable methods to maintain the secrecy of its CRM System, including requiring a password, tracking ISP addresses, and allowing access only on a need-to-know basis.

108. Defendant Bill Smith accessed Plaintiff LK's CRM System with the intent to pass the information on to his business entities, BHS MI, BHS CO, and Roof Goat.

109. Defendant Bill Smith's access of the Plaintiff LK's CRM System breached his duty to maintain secrecy.

110. Defendant Bill Smith had access to manipulate the CRM System because he misrepresented his intention about competing with Plaintiff LK in Michigan and he misrepresented his actions were consistent with his continued employment with Plaintiff LK.

111. Defendant Bill Smith's actions constitute theft of the trade secrets.

112. Defendants BHS MI, BHS CO, and Roof Goat all knew that the information passed on by Bill Smith (1) constituted a trade secret; and (2) was acquired through improper means.

113. Defendant Walter Scott Bennet likewise knew that the information passed

on by Bill Smith (1) constituted a trade secret; and (2) was acquired through improper means.

114. On information and belief, Defendants have used and continue to use Plaintiff LK's trade secrets.

115. Defendants' misappropriation of Plaintiff LK's trade secrets has injured and continues to injure Plaintiff LK.

WHEREFORE, the Plaintiffs respectfully requests that this honorable Court enter a judgment:

A. Ordering that any websites and/or companies Defendants control be permanently restrained and enjoined from

 i. Further infringing any of the ROOFMAN Mark, ROOFMAN Trade Dress, and ROOF TURBO Mark, and from producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying, or otherwise using any simulation, reproduction, counterfeit, copy, or colorable imitation of the ROOFMAN Mark, ROOFMAN Trade Dress, and/or ROOF TURBO Marks in conjunction with or related to any business performing construction services;

 ii. Using any simulation, reproduction, counterfeit, copy, or colorable imitation of any of the ROOFMAN Mark, ROOFMAN Trade Dress,

16

and ROOF TURBO Mark in connection with the promotion, advertisement, display, sale, offer for sale, distribution, or performance of any service related to or connected with construction services that would tend to link any of the Defendants to any of the Plaintiffs;

iii. Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any service sold by any of the Defendants are in any manner associated or connected with any of the ROOFMAN Mark, the ROOFMAN Trade Dress, and the ROOF TURBO Mark or are sold, licensed, sponsored, approved, or authorized by the Plaintiffs;

iv. Using any false descriptions or representations or any false designations of origin or from otherwise committing any acts of unfair competition with respect to either of the Plaintiffs and/or any of the ROOFMAN Mark, the ROOFMAN Trade Dress, and the ROOF TURBO Mark, by using any of the ROOFMAN Mark, the ROOFMAN Trade Dress, and the ROOF TURBO Mark without the authorization of Plaintiffs; and

17

   v.  Engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of any of Plaintiffs' marks or trade dress, or of Plaintiffs' rights in, or to use or to exploit, the ROOFMAN Mark, the ROOFMAN Trade Dress, and the ROOF TURBO Mark;

B. Ordering that each Defendant deliver for destruction all infringing products, signs, labels, brochures, advertising, promotional material prints, packages, electronic media, advertisements, and the like in their possession or under their control bearing any of the the ROOFMAN Mark, the ROOFMAN Trade Dress, and the ROOF TURBO Mark, or any simulation, reproduction, counterfeit, copy of colorable imitation thereof.

C. Ordering that each Defendant deliver for destruction all tangible and intangible material in their possession or under their control containing any trade secret, or portion thereof, belonging to Plaintiff LK.

D. Awarding Plaintiff LK its damages in an amount to be proven at trial for Defendants' trademark infringement, counterfeiting, and false designation of origin, including Defendants' profit, Plaintiff LK's loss, and/or, at Plaintiff LK's sole option, statutory damages for willful counterfeiting in an amount of up to $2,000,000 per occurrence;

E.      Awarding Plaintiff Roof Turbo its damages in an amount to be proven at trial for Defendants' trademark infringement, including Defendants' profit and Plaintiff Roof Turbo's loss;

F.      Awarding Plaintiff LK all direct, indirect, compensatory, exemplary, punitive and other damages available to it, in an amount to be proven at trial in excess of $75,000, for Defendants' theft of its trade secrets; and

G.      Awarding Plaintiffs interests, costs, reasonable attorney's fees, and all other relief that this honorable Court finds just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues pleaded herein.

Dated: August 11, 2025

By: /s/Thomas Heed
Thomas P. Heed (P66991)
Heed Law Group PLLC
2723 S. State Street, Ste. 150
Ann Arbor, MI 48104
theed@heedlawgroup.com